1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  UNITED STATES OF AMERICA,                CIVIL CASE NO. 07CV646 J
                                             CRIM CASE NO.  03CR1217 J
12                    Plaintiff/Respondent,
                                             **ORDER DENYING PETITION**
13         v.                                **FOR WRIT OF HABEAS**
                                             **CORPUS**
14  SUSAN MARIE HOGAN,

                      Defendant/Petitioner.
15

16         Before the Court is Petitioner Susan Marie Hogan's ("Petitioner") Petition for Writ

17  of Habeas Corpus filed pursuant to 28 U.S.C. § 2255.  "A prisoner in custody under

18  sentence of a court . . . claiming . . . that the sentence was imposed in violation of the

19  Constitution or laws of the United States, . . . or that the sentence was in excess of the

20  maximum authorized by law, . . . may move the court which imposed the sentence to

21  vacate, set aside or correct the sentence."  28 U.S.C. § 2255 (2000).  For the reasons set

22  forth below, the Court **DENIES** the Petition.

23                              *Background*

24         From approximately June 1997 to at least September 1998, Petitioner was a member

25  of a conspiracy to commit securities fraud.  (Plea Agreement at 4.)  Petitioner and her co-

26  conspirators operated a company known as Commercial Express LLC ("Commercial") as a

27  Ponzi scheme.  (*Id.* at 6.)  The scheme involved selling Media Units and Equity

28  Participations to investors.  (*Id.*)  Defendant and her co-conspirators represented that the

1   money received from those sales would be used to buy television time to advertise products

2   that would generate profits for investors.  (*Id.*)  In fact, Commercial had only minimal

3   product sales and no profits.  (*Id.*)  The company used the money it received from later

4   investors to pay earlier investors and its own overhead and expenses.  (*Id.*)

5        Petitioner participated in marketing the Media Units and Equity Participations,

6   which were not registered as required by securities laws and which were fraudulently

7   described to investors as legitimate investments.  (*Id.* at 4-5.)  Petitioner operated Nexgen

8   Financial ("Nexgen"), which was located in Del Ray Beach, Florida.  (*Id.* at 5.)  Nexgen

9   marketed Commercial via mailings and telemarketing.  (*Id.* at 6.)  Petitioner and Nexgen's

10  salespeople promised investors large returns on their investments from profits earned on

11  product sales.  (*Id.* at 6.)  As the operator, Petitioner shared in the commissions earned by

12  Nexgen's salespeople.  (*Id.*)

13       On May 1, 2003, Petitioner was charged in a seven-count information with various

14  offenses relating to securities fraud.  [Doc. No. 1.]  Pursuant to a written plea agreement,

15  Petitioner pled guilty to the seven counts, which included conspiracy to commit securities

16  fraud, securities fraud, mail fraud, and wire fraud.  [Doc. No. 5.]  Under the terms of the

17  plea agreement, Petitioner agreed to waive the right to appeal or to collaterally attack the

18  plea, conviction, or sentence unless the Court imposed a sentence in excess of the high end

19  of the guideline range based on an adjusted offense level of 23.  (*See* Plea Agreement at 15,

20  21.)  The plea agreement provided that the parties would jointly recommend a base offense

21  level of 6, a 14-level upward adjustment due to the amount of loss caused by Petitioner's

22  offense, a two-level upward adjustment due to the fact that the offense involved more than

23  minimal planning, a two-level upward adjustment due to the vulnerable nature of her

24  victims, a two-level upward adjustment due to her supervisory role in the offense, and a

25  three-level downward adjustment due to her acceptance of responsibility.  (*Id.* at 15.)  The

26  Government agreed to recommend a sentence at the low end of the guideline range found

27  by the Court, unless the Court adopted an offense level or downward adjustment or

28  departure below the Government's recommendation in the plea agreement.  (*Id.* at 17.)

The Court sentenced Petitioner on March 24, 2006.  [Doc. No. 27.]  The Court followed the recommendations of the parties and found a base offense level of 6, applied the parties' recommended adjustments, and applied a three-level downward adjustment based upon the Government's motion pursuant to U.S.S.G. § 5K1.1.  (Rep.'s Tr. of Sentencing at 12.)  This resulted in an adjusted offense level of 20 and a guideline sentencing range of 41 to 51 months in custody.  (*Id.*)  Petitioner was sentenced to a term of imprisonment at the low end of the range, 41 months.  (*Id.*)  On April 9, 2007, Petitioner filed the instant Petition.  [Doc. No. 38.]

### *Discussion*

The bulk of Petitioner's Petition focuses on her ineffective assistance of counsel claims.  (Pet. at 2.)  Petitioner asserts that her counsel was ineffective for telling her that she "would only miss one Christmas away from home" and for failing to adequately explain the calculation of criminal history points to her.  (*Id.*)  Additionally, Petitioner asserts that her counsel improperly advised her that she would receive the same sentence as co-defendant Bill Whitely.  (*Id.*)  Petitioner also asserts that her counsel was ineffective for failing to object to: (1) the fourteen-point enhancement she received due to the amount of loss caused by her offense; (2) the two-point enhancement she received due to the vulnerable nature of her victims; and (3) the two-point enhancement she received due to her supervisory role in the offense.  (*Id.* at 2-3.)  In addition to her ineffective assistance of counsel claims, Petitioner asserts that "the U.S. Attorney violated HOGAN'S constitutional rights by the misuse of the Patriots [sic] Act in this case."  (*Id.* at 3.)  Finally, Petitioner asserts that the sentencing enhancements she received violated her Sixth Amendment right to trial by jury.  (*Id.* at 3-4.)

In its Response, the Government argues that the Petition must be denied because: (1) Petitioner had ample opportunity to object to the sentencing enhancements at her disposition or sentencing hearing, and she failed to do so; (2) Petitioner waived her right to collaterally attack her sentence as part of her plea agreement; (3) Petitioner received

1   effective assistance of counsel; and (4) judicial fact-finding in sentencing is constitutional.[1]

2   (Gov't Resp. at 17-23.)  The Court examines each of these arguments in turn.

3   **I. Petitioner's Failure to Object to the Sentencing Enhancements**

4       As a preliminary matter, the Court must address the Government's argument that

5   Petitioner has waived the claims in her Petition because she failed to raise these issues at

6   her disposition hearing or sentencing hearing.  Specifically, the Government argues that

7   Petitioner waived her claims challenging the Court's imposition of the sentencing

8   enhancements because she failed to object to the inclusion of the enhancements during her

9   disposition hearing or her sentencing hearing.  (*Id.* at 17.)

10      A § 2255 petitioner cannot challenge nonconstitutional sentencing errors if such

11  errors were not challenged in an earlier proceeding.  *United States v. McMullen*, 98 F.3d

12  1155, 1157 (9th Cir. 1996) (citing *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir.

13  1995); *United States v. Keller*, 902 F.2d 1391, 1393 (9th Cir. 1990)).  A petitioner waives

14  the right to raise nonconstitutional claims in collateral proceedings unless she makes a

15  proper objection before the district court or in a direct appeal from the sentencing decision.

16  *Id.* (citing *Schlesinger*, 49 F.3d at 483; *Keller*, 902 F.2d at 1393.)  In contrast, courts

17  typically permit constitutional questions to be raised collaterally even though they could

18  have been raised on direct appeal.  *See Schlesinger*, 49 F.3d at 485 (citing *Vandergrift v.*

19  *United States*, 313 F.2d 93, 95 (9th Cir. 1963)).

20      Petitioner did not raise any of the claims presented in her Petition in an earlier

21  proceeding.  However, the Court still can entertain the claims if they present constitutional

22  issues.  *See id.*  Ineffective assistance of counsel is a constitutional violation, so no

23  forfeiture of Petitioner's ineffective assistance of counsel claims results from her failure to

24  raise them at an earlier proceeding or on appeal.  *See McMullen*, 98 F.3d at 1157-58.

25

26      [1] The Government also notes that Petitioner's Petition violates the Rules Governing § 2255
27  Proceedings in the United States District Courts because it is not signed under penalty of perjury.
    (Gov't Resp. at 18 n.29)  Rather, the words "Respectfully submitted" appear above Petitioner's
    signature on the Petition.  (Pet. at 5.)  Accordingly, Petitioner's Petition could be stricken for failure
28  to comply with the requirement that it be signed under penalty of perjury.  However, as discussed
    below, this issue is moot because the Petition fails for other reasons.

1   Similarly, Petitioner's claim that she was denied her right to trial by jury raises

2   constitutional issues, so the Court can entertain this claim.  Finally, Petitioner's claim that

3   her constitutional rights were violated by misuse of the Patriot Act presents a constitutional

4   question and therefore is not barred by her failure to raise this claim at sentencing or on

5   appeal.  In sum, because the claims in Petitioner's Petition raise constitutional questions,

6   the Court may entertain them even though Petitioner did not raise them at sentencing or on

7   appeal.

8   **II. Petitioner's Claim that Counsel Improperly Advised Her Regarding Sentencing**

9          Petitioner challenges the validity of her waiver of her right to collateral attack by

10   asserting that her counsel inadequately advised her regarding sentencing.  (*See* Pet. at 1-2.)

11   The Government argues that because Petitioner was sentenced within the guideline range

12   recommended by the Government, the plea agreement signed by Petitioner prohibits her

13   from collaterally attacking her sentence.  (Gov't Resp. at 20.)  The Government asserts that

14   Petitioner's claim of ineffective assistance of counsel cannot evade a waiver of collateral

15   attack absent an allegation that the waiver or plea was not voluntarily or knowingly

16   entered.  (*Id.* at 22.)

17          In general, a defendant who pleads guilty to a criminal charge may not later seek

18   federal habeas corpus relief on the basis of pre-plea constitutional violations.  *Hudson v.*

19   *Moran*, 760 F.2d 1027, 1029-30 (9th Cir. 1985).  She may, however, attack the voluntary

20   and intelligent character of the plea by demonstrating that the advice she received from

21   counsel did not constitute effective representation.  *Id.*  A defendant challenging a guilty

22   plea for ineffective assistance of counsel must establish that her counsel's performance was

23   deficient and that the deficient performance prejudiced her defense.  *Hill v. Lockhart*, 474

24   U.S. 52, 58-59 (1985).  In order to demonstrate prejudice in the plea context, the defendant

25   must show that there is a reasonable probability that, but for counsel's errors, she would not

26   have pled guilty but would have insisted on going to trial.  *Id.* at 59; *United States v.*

27   *Baramdyka*, 95 F.3d 840, 844 (9th Cir. 1996).

28          Petitioner appears to challenge the voluntariness of her plea by arguing that her

counsel improperly advised her as to the potential duration of her sentence.  The Court therefore reviews the record to determine whether the plea agreement, including the waiver of the right to collateral attack, was entered knowingly and voluntarily.  Section XI of the plea agreement provides:

> DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK
> In exchange for the Government's concessions in this plea agreement, defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and sentence, including any restitution order, unless the Court imposes a custodial sentence greater than the high end of the guideline range ... recommended by the Government pursuant to this plea agreement at the time of sentencing.

(Plea Agreement at 21.)  The plea agreement also contains a provision certifying that Petitioner read the agreement, discussed it with her attorney, and fully understood its meaning and effect.  (*Id.* at 13.)  The plea agreement is signed by Petitioner and, immediately above her signature, contains language confirming Petitioner's agreement with the "foregoing provisions."  (*Id.* at 22.)

At Petitioner's disposition hearing, in the presence of counsel, the Court summarized the provisions of the plea agreement and noted the maximum possible penalty for the offenses as well as the constitutional rights Petitioner was giving up.  (*See* Rep.'s Tr. of Disposition at 17-23.)  When asked whether she had read the plea agreement and whether someone had explained its contents to her, Petitioner stated, "[Attorney] Richard Dawson went over everything with me."  (*Id.* at 7.)  The Court also asked Petitioner several questions relating to the voluntariness of her plea:

> THE COURT: Has anyone threatened you, your family, or friends in order to get you to plead guilty?
> THE DEFENDANT: No.
> THE COURT: Are you doing this freely and voluntarily?
> THE DEFENDANT: Yes.
> THE COURT: Do you believe you have had enough time to discuss this case with Mr. Dawson?
> THE DEFENDANT: Yes, I do.
> THE COURT: Other than what is contained in your plea agreement, has anyone made any other promises to you in order to get you to plead guilty?
> THE DEFENDANT: No.
> THE COURT: You understand that I, as trial judge, not the attorneys, will decide what the appropriate sentence in this case will be?

1

THE DEFENDANT: Yes.

2

THE COURT: Now, you will be sentenced according to the sentencing guidelines.  Have the sentencing guidelines that apply to your case been explained to you by your attorney?

3

THE DEFENDANT: Yes.

4

5

(*Id.* at 21-22.)  The Court also questioned Petitioner regarding her waiver of her right to

6

appeal:

7

THE COURT: You and the Government would have a right to appeal from the sentence unless you waived your right to appeal under the plea agreement and the terms of the plea agreement have been complied with. Do you understand that?

8

9

THE DEFENDANT: Yes.

10

11

(*Id.* at 25.)  The Court next questioned Petitioner to determine whether any promises or

12

predictions had been made regarding her sentence:

13

THE COURT: Has anyone made any prediction, prophecy, or promises to you as to what your sentence in this case will be?

14

THE DEFENDANT: No.

THE COURT: Prediction, but no promise?

15

THE DEFENDANT: Prediction, but no promise.

THE COURT: Okay.  Mr. Dawson, do you feel you have had sufficient time to discuss this case with your client?

16

MR. DAWSON: Yes, your honor, I certainly have.

17

THE COURT: Other than what you stated on the record, what is contained in the plea agreement, have you made any other promises or representations to your client about what her sentence will be?

18

MR. DAWSON: No, I have not.

19

20

(*Id.* at 25.)  Finally, the Court made a finding that "the Defendant is in full possession of

21

her faculties, understands the nature of the proceedings, the consequence of the plea of

22

guilty, understands her constitutional and trial rights, has knowingly and intelligently given

23

up and waived those rights."  (*Id.* at 26.)

24

Petitioner has failed to demonstrate that the advice she received from counsel did

25

not constitute effective representation.  Petitioner asserts that her counsel advised her that

26

she would miss only one Christmas away from home, and that her counsel did not

27

adequately explain to her the calculation of criminal history points.  (*See* Pet. at 1-2.)

28

Petitioner also asserts that her counsel advised her that she would "receive the same amount

of time as Bill Whitely, Co-defendant." (*See* Pet. at 2.)  However, these assertions are directly controverted by the statements that Petitioner and her attorney made at the disposition hearing.  After examining the record of the disposition hearing, it is apparent that Petitioner understood that only the Court could decide what the appropriate sentence in Petitioner's case would be.  (Rep.'s Tr. of Disposition at 21-22.)  Both Petitioner and her counsel stated to the court that no promises had been made to Petitioner regarding her potential sentence.  (*Id.* at 25.)  Petitioner confirmed that she had sufficient time to discuss her case with her counsel, and that her counsel had explained to her the sentencing guidelines that applied to her case.  (*Id.*)  The record thus undermines Petitioner's claim that counsel was ineffective for improperly advising her as to her sentence.

Petitioner has also failed to demonstrate that she was prejudiced by counsel's alleged deficient performance.  Petitioner's plea ultimately resulted in a sentence of 41 months in custody.  (Rep.'s Tr. of Sentencing at 12.)  Without a plea agreement, Petitioner would have faced a sentence of 61 to 63 months in custody.  (*See* Rep.'s Tr. of Disposition at 23.)  These facts preclude a reasonable claim that absent counsel's alleged erroneous advice, Petitioner would have insisted on going to trial.  The Court thus **DENIES** Petitioner's first ineffective assistance of counsel claim because the record shows Petitioner voluntarily and knowingly entered into the plea agreement.

**III. Petitioner's Claim that Counsel Was Ineffective for Failing to Object to the Sentencing Adjustments**

Petitioner asserts that her counsel was ineffective at sentencing for failing to object to: (1) the fourteen-point enhancement she received due to the amount of loss caused by her offense; (2) the two-point enhancement she received due to the vulnerable nature of her victims; and (3) the two-point enhancement she received due to her supervisory role in the offense.  (Pet. at 2-3.)  In opposition to this claim, the Government notes that Petitioner stipulated to the enhancements in her plea agreement, and that counsel effectively represented Petitioner by negotiating reduced charges and a favorable sentencing recommendation.  (Gov't Resp. at 24.)

1    To prevail on her ineffective assistance of counsel claim, Petitioner must show that

2    her counsel's performance was deficient at sentencing, and this deficient performance

3    prejudiced her. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish

4    prejudice, Petitioner must show that there is a reasonable probability that, but for counsel's

5    unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

6    "A reasonable probability is a probability sufficient to undermine confidence in the

7    outcome." *Id.* However, "failure to raise a meritless legal argument does not constitute

8    ineffective assistance of counsel." *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir.

9    1989).

10    Petitioner has failed to demonstrate that counsel was deficient for failing to object to

11    the sentencing enhancements. In the plea agreement, Petitioner expressly stipulated to the

12    three enhancements at issue. (*See* Plea Agreement at 15.) If counsel had objected to these

13    enhancements at Petitioner's sentencing hearing, he would have violated the plea

14    agreement because Petitioner had specifically agreed to them. In addition, Petitioner has

15    failed to set forth a plausible theory under which her counsel could have objected to the

16    enhancements. Petitioner appears to assert that counsel should have objected on the basis

17    that the Court improperly engaged in judicial factfinding. (*See* Pet. at 3.) However,

18    Petitioner admitted the facts supporting the imposition of the enhancements in her plea

19    agreement and during her disposition hearing. (*See generally* Plea Agreement at 4-11;

20    Rep.'s Tr. of Disposition at 11-17.) It would have been illogical for Petitioner's counsel to

21    object to the enhancements on the grounds that a jury, and not a judge, was required to find

22    the facts supporting the enhancements, when Petitioner had already expressly admitted to

23    these facts. Counsel's failure to raise the meritless legal argument that a jury was required

24    to find the facts leading to the enhancements does not constitute ineffective assistance of

25    counsel. *See Shah*, 878 F.2d at 1162. Further, counsel made several legitimate arguments

26    in support of reducing Petitioner's sentence. For example, counsel argued that Petitioner

27    was eligible for a substantial reduction under U.S.S.G. § 5K1.1 because her cooperation

28    was a significant factor in persuading her co-defendants to plead guilty. (Rep.'s Tr. of

1  Sentencing at 6.)  In addressing Petitioner's criminal history score, counsel emphasized that

2  Petitioner's driving under the influence convictions did not involve collisions or injuries

3  and were unrelated to her conduct in the instant case.  (*Id.* at 8.)  Counsel also discussed the

4  difficulties Petitioner faced as a child, the support of her family, and her acceptance of

5  responsibility.  (*Id.* at 10.)  Because Petitioner has failed to establish that counsel's

6  performance at sentencing fell below an objective standard of reasonableness, the Court

7  **DENIES** Petitioner's second ineffective assistance of counsel claim.

8  **IV. Petitioner's Claim that Her Constitutional Rights Were Violated by Misuse of the**

9  **Patriot Act**

10  Petitioner asserts that her constitutional rights were violated by misuse of the Patriot

11  Act.  (Pet. at 3.)  Specifically, Petitioner asserts that there were "unlawful wiretaps and

12  misuse of information obtained illegally."  (*Id.*)  However, as noted in Section II of this

13  Order, a petitioner who pleads guilty to a criminal charge may not subsequently seek relief

14  on the basis of pre-plea constitutional violations.  *Hudson*, 760 F.2d at 1029-30.  When a

15  petitioner has "solemnly admitted in open court" that she is in fact guilty of the offense

16  with which she is charged, she may not later raise claims regarding the deprivation of

17  constitutional rights that occurred prior to the entry of the guilty plea.  *See Tollett v.*

18  *Henderson*, 411 U.S. 258, 267 (1973).  The petitioner "may only attack the voluntary and

19  intelligent character of the guilty plea."  *Id.*  The Court has already determined that, based

20  on the text of the plea agreement and the record of the disposition hearing, Petitioner

21  voluntarily and knowingly entered into the plea agreement.  Because the alleged misuse of

22  the Patriot Act does not involve the voluntariness of Petitioner's plea, and because the

23  alleged constitutional violation occurred before Petitioner entered into the plea agreement,

24  the Court **FINDS** that Petitioner's claim regarding the Patriot Act is barred.

25  **V. Petitioner's Claim that the Sentencing Enhancements Violated Her Right to Trial**

26  **by Jury**

27  Petitioner appears to assert that the sentencing enhancements the Court imposed

28  violated her Sixth Amendment right to trial by jury.  (Pet. at 3-4.)  Specifically, Petitioner

1    asserts that "[f]acts of enhancement were used in the plea agreement and were in the PSR,

2    but not admitted by the Defendant.  Thus they were inferred by the Judge in sentencing the

3    Defendant." (Pet. at 4.)  In opposition, the Government argues that Petitioner admitted to

4    the facts that led to the sentencing enhancements.  (Gov't Resp. at 27.)  In addition, the

5    Government asserts that under the circumstances of this case, any factfinding conducted by

6    the Court did not violate the Sixth Amendment.  (*Id.*)

7       "Judicial factfinding does not, on its own, violate the Sixth Amendment, even when

8    that factfinding is the basis for enhancing a defendant's sentence." *See United States v.*

9    *Fifield*, 432 F.3d 1056, 1066 (9th Cir. 2005).  A judge may enhance a sentence based on

10    judicial factfinding so long as the sentence does not exceed the statutory maximum

11    imposed solely on the basis of the facts admitted by the defendant.  *See id.*

12       In her plea agreement, Petitioner admitted to facts that were the basis for enhancing

13    her sentence.  (*See generally* Plea Agreement at 4-11.)  Additionally, Petitioner's counsel

14    stated the facts supporting the enhancements during the disposition hearing.  (*See generally*

15    Rep.'s Tr. of Disposition at 11-17.)  Petitioner confirmed that the facts recited by her

16    attorney were true.  (*Id.* at 17.)  Accordingly, Petitioner has failed to set forth any facts that

17    were independently found by the Court, rather than being admitted to by Petitioner.  Her

18    argument that the Court conducted factfinding in violation of her Sixth Amendment rights

19    is therefore without merit.

20       Even if the Court made factual findings independent of the facts Petitioner admitted,

21    those findings did not increase Petitioner's statutory maximum sentence.  (*See* Rep.'s Tr. of

22    Disposition at 20-21.)  At the time of Petitioner's disposition hearing, the statutory

23    maximum term of imprisonment for a conviction of conspiracy to commit securities fraud

24    was five years.  *See* 18 U.S.C. § 371 (2002).  Similarly, the statutory maximum term of

25    imprisonment for a conviction of mail fraud or a conviction of wire fraud was five years.

26    *See* 18 U.S.C. §§ 1341, 1343 (2002).  The statutory maximum term of imprisonment for a

27    conviction of securities fraud was ten years.  *See* 15 U.S.C. § 78ff (2002).  Petitioner was

28    sentenced to 41 months in custody.  (Rep.'s Tr. of Sentencing at 12.)  Because this sentence

did not exceed the statutory maximum for any of the offenses to which Petitioner pleaded, any factfinding conducted by the Court did not violate Petitioner's Sixth Amendment rights. *See Fifield*, 432 F.3d at 1066. The Court thus **FINDS** that Petitioner's claim that the Court conducted factfinding in violation of the Sixth Amendment is without merit.

**VI. Evidentiary Hearing**

A district court may not deny a 28 U.S.C. § 2255 petition without a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 (2000). In order for a petitioner to qualify for an evidentiary hearing, she must "make specific factual allegations which, if true, would entitle [her] to relief." *Baumann v. United States,* 692 F.2d 565, 571 (9th Cir. 1982). "[N]o hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Shah v. United States,* 878 F.2d 1156, 1158 (9th Cir. 1989) (internal quotations omitted).

Here, Petitioner's § 2255 Petition and the record conclusively show that Petitioner is entitled to no relief. Further, there are no factual disputes for which an evidentiary hearing would be needed to develop the record. The Court therefore declines to hold an evidentiary hearing in this matter.

### *Conclusion*

For the reasons stated above, the Court **DENIES** Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2255.

**IT IS SO ORDERED.**

DATED: August 3, 2007

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc: All Parties